William R. Richardson (009278)
**RICHARDSON & RICHARDSON, P.C.**
1745 South Alma School Road
Corporate Center • Suite 100
Mesa, Arizona 85210-3010

Tel.    (480) 464-0600
Fax.    (480) 464-0602
Email.   wrichlaw@aol.com
*Attorneys for Creditor Amsberry Family Trust*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| **JASON DOMINIC LEVECKE and ANDREA YVETTE LEVECKE,** | 2:16-bk-00639-DPC |
| Debtors. | **MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT BETWEEN:** |
| | **(1) AMSBERRY FAMILY TRUST; (2) JASON AND ANDREA LEVECKE; (3) JC 123 HOLDINGS, LLC; and (4) MJC HOLDINGS 123, LLC** |
| | **PURSUANT TO RULE 9019** |

The Amsberry Family Trust (the "Trust"), hereby requests this Court to enter its order pursuant to Rule 9019, *F.R. Bankr.R.* approving the Settlement and Release Agreement attached hereto as Exhibit "A" (the "Settlement"). The Settlement is an agreement pursuant to which following will occur, if the Settlement is approved by the Court:

A.   The Trust will release its claims against Jason and Andrea LeVecke all as set forth in Adv. No. 2:16-ap-00210-DPC (the "Adversary") arising from, among other things, fraud;

B.   JC 123 Holdings, LLC ("JC 123") will release the Trust from any obligations arising under a carry back note in the amount of $216,000;

C. The Trust and MJC Holdings 123, LLC ("MJC") will cancel the lease back arrangement between them;

D. JC 123 will assign its rights to an underlying lease to the Trust; and

E. The purchase price for the Property that the Trust purchased from JC 123 shall be deemed reduced by $216,000.

In support of this motion, the Trust incorporates the following Memorandum of Points and Authorities herein by this reference.

**DATED** this ___19th___ day of January, 2017.

**RICHARDSON & RICHARDSON, P.C.**

By___/s/ WRR 009278_____
   William R. Richardson
   1745 South Alma School Road
   Corporate Center • Suite 100
   Mesa, Arizona 85210-3010
   Attorneys for Amsberry Family Trust

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Statement of Factual Background giving rise to Settlement and the terms of Settlement.**

1.     JC123 is a limited liability company organized under the laws of Texas whose address is, according the Secretary of State of the State of Texas, 5210 S. Priest Dr. Ste. 3, Guadalupe, AZ 85283.

2.    Jason LeVecke and his brother Carl LeVecke are the managers of JC123 according to the Articles of Organization filed August 10, 2007 with the Texas Secretary of State's office.

3.    JC123 was originally formed with the name of MJKL Enterprises Texas, LLC and was, pursuant to Article III of the Articles of Organization, to "transact any legal and lawful business."

4.    On November 3, 2009, the Articles of Organization were amended to specifically amend Article III to read as follows:

> The purpose of MJKL Enterprises Texas, LLC is limited exclusively to the development and operation of Carl's Junior restaurants and other restaurants operated by MJKL Enterprises Texas, LLC and franchised by Carl Karcher Enterprises, Inc.

5.    Carl Karcher Enterprises, Inc., through its subsidiaries, owns, operates, and franchises a chain of quick-service fast-food restaurants in the United States and internationally.

6.    Carl Karcher Enterprises, Inc. operates as a subsidiary of CKE Restaurants, Inc.

7.    Carl Karcher Enterprises, Inc. and CKE Restaurants, Inc. are businesses that were formed, controlled and operated by restaurant magnate Carl Karcher.

8.    Upon information and belief, Jason LeVecke and Carl LeVecke are Carl Karcher's grandsons.

9.   Jason and Carl and their wives owned or controlled a number of entities which in turn, owned or operated at least 170 Hardee's or Carl's Jr. restaurants in various locations throughout the United States including Arizona, Texas, Illinois, Missouri, Kentucky and Tennessee.

10.  Among many other entities, Jason Levecke is the managing member of MJC whose address is listed in the office of the Arizona Corporation Commission as 5210 S. Priest Dr. Ste. 3, Guadalupe, AZ 85283.

11. JC123 and MJC are nominally owned by Carl and Jason LeVecke and their wives and therefore, the trustees in the cases now pending for the two couples may claim some rights or interests in the two entities.

12. Jason LeVecke is also the managing member of Frontier Star 1, LLC, a Delaware limited liability company ("Frontier"), whose address is listed in the office of the Arizona Corporation Commission as 5210 S. Priest Dr. Ste. 3, Guadalupe, AZ 85283.

13. Frontier is now the subject of bankruptcy proceedings in the United States Bankruptcy Court for the District of Arizona (Case #2:15-bk-14679-DPB)(Chapter 11).

14. Jason and Andrea LeVecke represented to the Trust that they had great holdings of immense value together with wide ranging and substantial business interests in the restaurant industry throughout the United States.

15. Among other things, Jason LeVecke represented that he and his company Frontier, had both great worth and financial stability that would guarantee that the transaction that he, Jason LeVecke, ultimately proposed, would be financially sound and would have essentially no risk to the Trust.

16. These representations were false and were, among other disclosures and representations, the predicate for the Trust's willingness to enter into any financial dealings with JC 123, MJC or Jason and Andrea LeVecke.

17. For example, Frontier has claims filed under oath against it in the amount of not less than $41,647,905.81.

18. Many of the over 40 claims that have been filed against Frontier were guaranteed by Jason and Andrea LeVecke.

19. Jason and Andrea LeVecke have claims filed under oath against them in their administrative case amount of not less than $16,681,813.32.

20. Among other written representations that Jason and Andrea LeVecke provided to the Trust, on or about February 20, 2015, they provided a financial statement dated January 1, 2015 (the "Financial Statement").

21. The Financial Statement was materially false in that, among other things, Jason and Andrea LeVecke represented that they owned not less than $1,675,000.00 in real estate and that they owned member/partner interests with a value of not less than $72,600,000.00.

22. The Financial Statement was false in that it also failed to list numerous contingent liabilities, some of which are mentioned above.

23. Such representations were false, in that Jason and Andrea LeVecke, along with Frontier, among others, were entering into a large number of transactions pursuant to which the LeVeckes and their companies were executing lease guarantees which could not be complied with due to the LeVeckes' and their companies' poor financial condition, all as reflected in, among other lawsuits, *Remur, LLC v. LeVecke et al.*, case no. 2:15-cv-02180-JJT now pending in the United States District Court for the District of Arizona and *KMK Group, LLC et al. v. LeVecke et al.*, case no. 1:15-cv-08140 now pending in the United States District Court for the Northern District of Illinois, Eastern Division.

24. In connection with the transaction at issue in the Adversary, Jason LeVecke represented to the Trust that he had property to sell located at 116 N. Larkin St. in Joliet, Illinois (the "Property").

25. In reality, neither Jason LeVecke nor JC 123 owned the Property.

26. The Property, unbeknownst to the Trust, was owned by an entity by the name of CJS Joliet Larkin Ave, LLC, a Delaware limited liability company ("CJS").

27. Jason LeVecke proposed an arrangement whereby he or one of his companies, would sell the Property to the Trust for $1.6 million and would lease back the property from the Trust at a rate that would not only provide substantial income to the Trust, but would more than offset any amounts the Trust would owe under the terms of a carry back note.

28. Jason provided to the Trust, information, including financial projections, that purported to reflect not only that the lease back arrangement would provide the funds with which to pay the a portion of the purchase price, but would result in substantial profits to the Trust.

29. As part of the purchase transaction, and on the strength of Jason LeVecke's representations, on or about May 12, 2015, the Trust paid the purchase price by executing a promissory note in the amount of $216,000 (the "Note") and by paying the balance of the purchase price in cash (approximately $1,384,000).

30. The Note provided for payment of monthly interest payments of $1,350 over the course of a year with a maturity date of May 12, 2016.

31. In connection with JC 123's purchase of the Property from CJS for $1,000,000, JC 123 simultaneously transferred the Property to the Trust and pocketed approximately $400,000 in cash.

32. The "flip" nature of the transaction was hidden from the Trust.

33. As part of the purchase transaction, Jason LeVecke had his company MJC, enter into a bogus twenty year lease dated May 12, 2015, which required monthly lease payments commencing at $10,000 for the first five years, with increasing payments up to $11,576.25 for the last five years of the lease term (the "Apex Lease").

34. Jason and Andrea LeVecke, together with Frontier, executed a guaranty of the Apex Lease pursuant to a document entitled Personal Guaranty of Lease dated May 12, 2015 (the "Guaranty").

35. MJC paid only two lease payments under the Apex Lease before defaulting and both of those payments were less than the amount required under the terms of the Lease ($8,650 each).

36. Neither Jason and Andrea LeVecke nor Frontier have made payments under the Guaranty despite demands that they do so.

37. Similarly, in dozens of other similarly structured transactions, Jason and Andrea LeVecke, through entities that they owned or controlled, made only one or two payments on the lease back leases and then failed or refused to continue to make payments despite their having reaped millions of dollars from unsuspecting buyers through similar undisclosed "flip" transactions.

38. On April 29, 2016, the Trust filed the above referenced Adversary.

39. In its adversary complaint, the Trust stated claims against the Debtors for fraud, fraudulent schemes, and intentional act/scheme or artifice to defraud.

## THE SETTLEMENT

The Parties have entered into the Settlement which essentially provides as follows:

40. Under the terms of the Settlement agreement, the following material terms will apply to MJC, JC 123, the LeVeckes and the Trust (collectively the "Parties"):

A. Upon Bankruptcy Court approval of the Parties' Settlement, JC123 will assign to the Trust any and all rights it has to the Apex Lease.

B. Upon Bankruptcy Court approval of the Parties' Settlement, the Lease between the Trust and MJC shall be of no further force and effect as between the Parties, provided however, that this provision shall not affect the Trust's claims against Frontier.

C. Upon Bankruptcy Court approval of the Parties' Settlement, the Parties will adjust the purchase price of the Property by $216,000. The adjustment will be effectuated by voiding the Note. To the extent that the original Note can be located, the LeVeckes and JC123 shall will immediately supply to counsel for the Trust, the original Note with a notation thereon to the effect that the Note

1    is "VOID" such that the Note is non-negotiable and of no further force and

2    effect. The LeVeckes and JC123 will make reasonable efforts to locate the

3    Note.

4     D.   Upon Bankruptcy Court approval of the Parties' Settlement, the Trust and the

5       LeVeckes will agree to dismiss the Adversary with each party to bear their

6       respective costs and fees.

7     E.   Upon Bankruptcy Court approval of the Parties' Settlement, the Parties shall be

8       deemed to have released each other from any and all claims[1] arising between

9       them.

10                  **THE PARTIES**

11      41. The parties involved in this Settlement do not only include the parties to the

12 Adversary, but also include JC123 and MJC.

13      42. As noted above, these two entities are nominally owned by Carl and Jason

14 LeVecke and their wives.[2]

15      43. As the LeVeckes are the subject of separate Chapter 7 proceedings, their

16 respective Chapter 7 trustees may claim some interest in JC123 and / or MJC.

17      44. Jason LeVecke is a 50% owner of JC123.

18      45. Jason LeVecke is a 38% owner of MJC.

19      46. Under the terms of an Operating Agreement dated January 1, 2011 (the

20 "Operating Agreement," the managers and members of JC123 have certain rights and

21 responsibilities.

22      47. Under ¶ 3.6 of the Operating Agreement, among other obligations, the

23 members of JC123 have an obligation to refund distributions.

24

25

26 [1] "Any and all claims" is a defined term in the Parties' agreement and in essence will result in a full and complete release for all potential, known or unknown claims that may exist or arise

27 between the Parties.

28 [2] A sister apparently owns 24% of MJC according to Jason LeVecke's schedules.

48. Where there are "material obligations owing to the company," an operating agreement is an executory contract which must be assumed by the trustee. *Movitz v. Fiesta Inv., LLC (In re Ehmann)*, 319 B.R. 200, 204 (Bankr. D. Ariz. 2005).

49. There is no evidence that the trustees in either the Carl LeVecke or the Jason LeVecke individual Chapter 7 cases timely assumed the operating agreement for JC123.

50. "[E]xecutory contracts —unlike all other assets—do not vest in the trustee as of the date of the filing of the bankruptcy petition. They vest only upon the trustee's timely and affirmative act of assumption." *See Fursman v. Ulrich (In re First Protection, Inc.)*, 440 B.R. 821, 831 (B.A.P. 9th Cir. 2010).

51. Thus, the Operating Agreement is deemed rejected. *Id.*(trustee does not retain right as manager of rejected operating agreement).

52. Thus, Jason LeVecke ostensibly retains his right to manage the affairs of JC123 and therefore is entitled to settle with the Trust.

53. Pursuant to the lease between the Trust and MJC, the lease is terminable at any time as a result of MJC's failure to pay rent.

54. Thus, the termination of the MJC Lease pursuant to the Parties' Agreement as set forth herein, is indubitable and not subject to objection.

55. Moreover, since the $216,000 note was executed predicated upon the false representations and fraudulent inducement of, among others, Jason LeVecke individually and as manager of JC123, the Trust has a complete defense to the enforcement of the Note even if JC123 were to attempt to enforce the subject Note through one or both of the LeVecke trustees.

## APPLICABLE LAW

In considering the propriety of the proposed Settlement, the Court and interested parties should consider *Woodson v. Fireman's Fund Insurance Co. (In re Woodson),* 839 F.2d 610 (9th Cir. 1988). In that case, the court considered the Bankruptcy Court's duties and obligations with respect to approval of compromises under Bankruptcy Rule

9019. Accordingly, the court may approve a compromise as long as it is fair and equitable. In making that determination, the court must consider the following factors:

> (1) The probability of success in the litigation;
>
> (2) The difficulties, if any, to be encountered in the matter of collection;
>
> (3) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily involved in continuing the litigation;
>
> (4) The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 620. *See also, Martin v. Kane* (*In re A.C. Properties*), 784 F.2d 1377, 1380-81 (9th Cir.), *cert. denied sub nom. Martin v. Robinson*, 107 S. Ct. 189 (1986). In this case, an analysis of the four factors set forth in the *Woodson* case, supports this court's approval of the compromise set forth in the Settlement all as more fully discussed below.

### **PROBABILITY OF SUCCESS**

The likelihood of success in this case is not terribly in doubt based upon, among other things, the facial falsity of the financial statement that Jason LeVecke provided to the Trust. The Trust believes that settlement is advisable at this point because of the number of complaints[3] that have been filed against Jason and Andrea LeVecke, the judgements that have been entered as a result of those complaints, and the apparent paucity of future funds with which to pay any judgment in favor of the Trust. Moreover, the Trust believes that the Settlement set forth in the Parties' agreement will have essentially no impact on the Chapter 7 estates of either Jason or Carl LeVecke. Moreover, even if the respective trustees were to attempt to assume the management rights of JC123 and / or MJC, any attempt to assert claims against the Trust would be easily defended. Accordingly, the Trust believes it is in the best interests of the Chapter 7 estates to settle this matter in accordance with the terms of the Settlement.

---

[3] These are exception to discharge complaints under §523.

## COLLECTION

As noted, the Trust believes that there is little if any likelihood of collecting against the LeVeckes.

## COMPLEXITY OF CASE

It is anticipated that liquidating this matter would consume a substantial period of time with further delay and expense to both the Trust and to the Debtors. Accordingly, the Parties believe that approval of the Settlement is is prudent and appropriate.

## INTEREST OF CREDITORS

As with all compromises, the Parties recognize the benefits of a settlement in terms of certainty and a savings of litigation expenses. In this case, the major benefit will be a savings of costs and expenses and the avoidance of unnecessary litigation. Moreover, the Settlement lends certainty where JC123 and MJC are concerned. There appears to be no benefit, yet no material detriment to the Chapter 7 estates of either Jason or Carl LeVecke.

Thus, based upon the foregoing, the Trust believes that it is in the best interest of both creditors and the estate to compromise this matter in the manner set forth in the Settlement. Accordingly, the Trust requests that this Court approve the Settlement and that the Court incorporate the terms thereof in the order of the Court approving the Settlement.

**DATED** this _____19th_____ day of January, 2017.

**RICHARDSON & RICHARDSON, P.C.**

By____/s/ WRR 009278_____
William R. Richardson
1745 South Alma School Road
Corporate Center • Suite 100
Mesa, Arizona 85210-3010
Attorneys for Amsberry Family Trust

**ORIGINAL** of the foregoing electronically
filed this _____19th_____ day of January, 2017 and a
**COPY** mailed/emailed this same date to:

Todd Feltus
Julia A. Wagner
KERCSMAR & FELTUS, PLLC
7150 East Camelback Road, Suite 285
Scottsdale, AZ 85251
*Attorneys for Debtors*

Dina Anderson
21001 N. Tatum Blvd., #1630-608
Phoenix, AZ 85050
*Chapter 7 Trustee*

Ryan Anderson
Alisan M. B. Patten
GUTTILLA MURPHY ANDERSON
5405 E. High Street, Suite 200
Phoenix, AZ 85054
*Attorneys for Dina L. Anderson, Chapter 7 Trustee*

By  /s/ajc

Z:\DOC\DOC A-K\A\Amsberry\Pleadings\Amsberry v. LeVecke ADV\9019 Mo Approv STAG J LeVecke.wpd

# EXHIBIT "A"

# SETTLEMENT AND RELEASE AGREEMENT

The Amsberry Family Trust, a California Living Trust ("Amsberry") and Jason Dominic LeVecke and Andrea Yvette LeVecke (collectively the "LeVeckes") (Amsberry and the LeVeckes are hereinafter referred to as the "Principal Parties") together with JC123 Holdings, LLC, a Texas limited liability company ("JC123") and MJC Holdings 123, LLC a Delaware limited liability company ("MJC") (Amsberry, the LeVeckes, JC123 and MJC are collectively hereinafter referred to as the "Parties") enter into this Settlement Release Agreement this 9th day of December, 2016 for the purposes of fully resolving any and all claims between the Parties to this Agreement and state as follows:

## R E C I T A L S:

A.    Amsberry is a California Living Trust, the Trustee of which is James N. Amsberry who is a resident of Fullerton, Orange County, California.

B.    The LeVeckes are residents of Phoenix, Maricopa County, Arizona and are Debtors in the Chapter 7 case now pending in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"), Case No. 2:16-bk-00639-DPC.

C.    The LeVeckes are husband and wife.

D.    The Principal Parties are involved in an adversary proceeding now pending in the Bankruptcy Court Adv. No. 2:16-ap-00210-DPC (the "Litigation").

E.    In the Litigation, Amsberry has alleged, among other things, that the LeVeckes individually or collectively, committed certain acts, which if proved, would potentially result in the exception of Ambsberry's claims against the LeVeckes from discharge.

F.    In the Litigation, the LeVeckes have denied committing any acts which would result in an exception from discharge.

{00130142.DOCX:1 / JAW}

File No. 1137.01

G.     JC123 is a limited liability company organized under the laws of Texas whose address is, according the Secretary of State of the State of Texas, 5210 S. Priest Dr. Ste. 3, Guadalupe, AZ 85283.

H.     Jason LeVecke and his brother Carl LeVecke are the managers of JC123.

I.     MJC is a Delaware limited liability company whose address is listed in the office of the Arizona Corporation Commission as 5210 S. Priest Dr. Ste. 3, Guadalupe, AZ 85283.

J.     Jason LeVecke is the managing member of MJC.

K.     Jason LeVecke is also the managing member of Frontier Star 1, LLC, a Delaware limited liability company ("Frontier"), whose address is listed in the office of the Arizona Corporation Commission as 5210 S. Priest Dr. Ste. 3, Guadalupe, AZ 85283.

L.     On July 27, 2015, two entities owned or controlled by the Defendants, filed Chapter 11 bankruptcy in the Bankruptcy Court, including: Frontier Star, LLC (Case #2:15-bk-09383-EPB) and Frontier Star, CJ, LLC (Case #2:15-bk-09385-EPB).

M.     On November 17, 2015, Frontier filed Chapter 11 bankruptcy in the Bankruptcy Court (Case #2:15-bk-14679-DPC), which was consolidated with the other two bankruptcy cases.

N.     Jason LeVecke individually, or through his authorized agent, Alliance Investment Real Estate Group, represented to Amsberry that JC123 had property to sell which property was located at 116 N. Larkin St. in Joliet, Illinois (the "Property").

O.     Jason LeVecke proposed an arrangement whereby JC123 would sell the Property to Plaintiff for $1.6 million and would lease back the property from Plaintiff (through another entity) at a monthly rental amount.

P.      Under the arrangement described above, MJC was to be the lessee and signed a twenty year lease dated May 12, 2015 with Amsberry, as lessor, for the Property (the "Lease").

Q.      The Lease provided that MJC would pay rental payments to Amsberry ranging from an initial payment of $10,000 per month, to $11,576.25 per month.

R.      The Property was already the subject of a lease dated March 19, 2012 between KFC Corporation, a Delaware corporation and Apex Brands Chicago, LLC ("Apex"), an Illinois limited liability company (the "Apex Lease").

S.      The Apex lease has been assigned to subsequent lessees and has been assigned to subsequent lessors.

T.      Under the terms of the Lease between the Principal Parties, the Apex Lease was to become subordinate to the Lease and thus, Apex or its successor would become a sublessee of the Property.

U.      On or about May 12, 2015, Amsberry paid the purchase price by executing a promissory note in the amount of $216,000 (the "Note") to JC123 and by paying the balance of the purchase price for the Property in cash.

V.      The LeVeckes executed a document entitled "Personal Guaranty of Lease" dated May 12, 2015, pursuant to which the LeVeckes guaranteed full performance under the Lease (the "Guaranty").

W.      MJC paid two payments under the lease which reflected a deduction for the amounts due to JC123 from Amsberry under the Note.

X.      MJC thereafter failed to make any payments under the Lease.

Y.      LeVeckes have likewise failed to make any payments under the terms of the Guaranty.

{00130142.DOCX;1 / JAW}

File No. 1137.01

Z.     The Parties now desire to forever and unconditionally resolve, release and discharge any and all claims existing among the Parties to this Agreement.

## A G R E E M E N T:

**NOW THEREFORE**, in consideration of the mutual promises, covenants, conditions and restrictions contained herein the Parties agree as follows:

26.     Upon Bankruptcy Court approval[1] of this Agreement, JC123 will assign to Amsberry any and all rights it has to the lease dated March 19, 2012 between KFC Corporation and Apex Brands Chicago, LLC.

27.     Upon Bankruptcy Court approval of this Agreement, the Lease between Amsberry and MJC shall be of no further force and effect as between the Parties provided however, that this provision shall not affect Amsberry's claims against Frontier Star 1, LLC.

28.     Upon Bankruptcy Court approval of this Agreement, the parties agree to adjust the purchase price of the Property by $216,000.   The adjustment will be effectuated by voiding the Note.   To the extent that the original Note can be located, the LeVeckes and JC123 will immediately supply to counsel for Amsberry the original Note with a notation thereon to the effect that the Note is "VOID" such that the Note is non-negotiable and of no further force and effect. The LeVeckes and JC123 will make reasonable efforts to locate the Note.

---

1     As used herein, "Bankruptcy Court approval" shall mean that the Bankruptcy Court in both the LeVecke's Chapter 7 bankruptcy case and, also in the Carl and Neisha LeVecke Chapter 7 case (case no. 2:16-bk-00640-PS) shall have finally approved this Agreement after notice to creditors and all interested parties in both Chapter 7 cases.

{00130142.DOCX;1 / JAW}

File No. 1137.01

29.     Upon Bankruptcy Court approval of this Agreement, Amsberry will withdraw his non-dischargeability claims against Jason LeVecke and Andrea LeVecke in the Litigation.

30.     Amsberry warrants and represents that James Amsberry is vested with full authority under the laws of the State of California to act for and on behalf of Amsberry.

31.     Amsberry further warrants and represents that there are no legal or other restrictions which would adversely impact Mr. Amsberry's authority to execute this Agreement and thereby bind Amsberry to the terms of this Agreement.

32.     Jason LeVecke hereby warrants and represents that he is vested with full authority to execute this Agreement for and on behalf of himself individually.

33.     Andrea LeVecke hereby warrants and represents that she is vested with full authority to execute this Agreement for and on behalf of herself individually.

34.     Jason LeVecke hereby warrants and represents that he is currently the managing member of JC123 and MJC and vested with full authority to execute this Agreement for and on behalf of JC123 and MJC.

35.     Except as provided herein below, the Parties hereto make no warranties or representations as the claims to be released, or any other consideration given in connection with this Agreement.

36.     Rather, the Parties hereto have made their independent analyses as the value of the consideration paid or received or to be paid or received in connection with this Agreement and all Parties hereto have satisfied themselves as to the value thereof.

37.     Subject to Bankruptcy Court approval of this Agreement, Amsberry forever unconditionally releases and waives any and all claims Amsberry may have against the LeVeckes, MJC or JC123.

{00130142.DOCX;1 / JAW}

File No. 1137.01

38.     Subject to Bankruptcy Court approval of this Agreement, MJC, JC123 and the LeVeckes hereby forever unconditionally release and waive any and all claims they may have against Amsberry.

39.     As utilized in the foregoing paragraphs, the terms "any and all claims" shall apply to and include any and all existing and future damages and claims which are known and which are not now known to the Parties but which may later develop or be discovered, including the effects or consequences thereof, and includes all claims, demands, causes or rights of action, liabilities, or obligations of any kind, type, or nature which exist as of the date of this Agreement or which might otherwise exist but for the occurrence of a condition precedent to the accrual of such claims, rights of action, liabilities or obligations. Notwithstanding the terms contained in this paragraph or any other term of this Agreement, the releases contained herein shall not operate to release or absolve any Party hereto from any claim or duty arising from this Agreement or a breach thereof.

40.     The releases set forth herein shall apply to the Parties being released and their respective partners, officers, directors, agents, employees, managers, attorneys, accountants, heirs, executors, administrators, personal representatives, successors, beneficiaries, and assigns and the respective former and/or present spouses of all such persons. All of the foregoing persons shall be specifically deemed to be third party beneficiaries of this Agreement.

41.     Immediately upon the execution of this Agreement:

A.     Amsberry will submit to the Bankruptcy Court a motion under Bankruptcy Rule 9019 to which this Agreement will be attached seeking court approval of this Agreement, with notice to all creditors and interested parties in (1) the Carl LeVecke individual Chapter 7 bankruptcy case (case

{00130142.DOCX;1 / JAW}

6 of  14

File No. 1137.01

no. 2:16-bk-00640-PS), (2) the LeVeckes' individual Chapter 7 bankruptcy case and to the respective Chapter 7 trustees and their attorneys in each such case;

B.    The Parties will execute a stipulation providing for the dismissal of the Litigation which shall be lodged into the Bankruptcy Court and which shall be effective only upon final Bankruptcy Court approval of this Agreement; and

C.    The Parties will take such other and further actions as may be necessary to fully absolve the Parties hereto from any and all claims and shall further stay any proceedings in the Litigation pending Bankruptcy Court approval or rejection of this Agreement.

42.    The Parties hereto acknowledge and agree that they have undertaken their own independent investigation as to the material facts, allegations, claims and liabilities being asserted or released in connection with this Agreement and that they are not relying upon the representations of any Party hereto or their agents, attorneys, employers or anyone acting on their behalf.

43.    This Agreement and the validity thereof is subject to Bankruptcy Court approval and shall be deemed void in the event the Bankruptcy Court fails or refuses to approve this Agreement and the Bankruptcy Rule 9019 motion that Amsberry is to file with the Bankruptcy Court in both Chapter 7 cases.

44.    The Parties stipulate and agree that they shall take no action which may result in the assertion of a tax claim against any other party arising from any alleged forgiveness of debt. Rather, the Parties hereto stipulate and agree that the settlement and release provided for under the terms of this Agreement constitute (1) a recalculation and

{00130142.DOCX;1 / JAW}

File No. 1137.01

redetermination, based on subsequently discovered facts, of the true value of the consideration paid or to be paid under the terms of the Note and related agreements and (2) the settlement of disputed claims between the Parties.

45.     This Agreement constitutes a settlement document and shall not constitute an admission of fact by any party hereto and shall not be admissible in any proceeding for purposes of proving the validity or the invalidity of any of the claims or defenses relating to the subject matter of this Agreement, except in a proceeding commenced to enforce the rights arising under the terms of this Agreement as a result of any alleged breach of this Agreement.

46.     All duties and obligations imposed on the Parties shall be performed within the latter of ten days after (1) the execution of this Agreement by all Parties or (2) approval of this Agreement by the Bankruptcy Court.

47.     The Parties shall pay their own costs, expenses and attorneys' fees incurred in connection with all proceedings pertaining to the subject matter of this Agreement or to be incurred in connection with the Litigation or the documentation, noticing and execution of this Agreement.

48.     If any of the Parties are required to utilize the services of an attorney to enforce the provisions of this Agreement, the prevailing party shall be awarded its reasonable costs and attorneys' fees in connection with any such enforcement action. Costs and attorneys' fees shall be determined by the court and not by a jury.   The right to recover attorneys' fees and costs extends to any and all proceedings undertaken to enforce this Agreement including, but not limited to (1) civil litigation in any state or federal tribunal, (2) arbitration proceedings and/or (3) bankruptcy proceedings.

{00130142.DOCX;1 / JAW}

File No. 1137.01

49.     Without increasing their respective obligations hereunder, the Parties to this Agreement hereby agree and assure each other that they will do such acts and execute all such documents, if any, as may be necessary or appropriate to implement this Agreement in accordance with its terms, including, but not limited to, recording documents, submitting stipulations, obtaining Bankruptcy Court approval of stipulations or orders and the like.

50.     This Agreement shall bind the Parties hereto, and all of their respective heirs, assigns, successors, representatives, and trustees.

51.     The Parties hereto acknowledge and represent that they have received any and all consideration to which they are entitled in good funds and that no additional consideration is expected or shall be forthcoming from any other party except as to the Parties' continuing duties and obligations arising under this Agreement.

52.     The Parties acknowledge and agree that this Agreement was the product of a joint drafting effort by their attorneys and in the event of a dispute as to its interpretation, no ambiguity shall be construed for or against any party.   Rather, it is the Parties' intent that the court shall construe this Agreement fairly and in a manner that gives full effect to its purpose and intent.

53.     This Agreement contains a full integration of the Parties' agreement and no prior representations, warranties or other agreement shall bind the Parties hereto.

54.     The Parties to this Agreement have consulted with and have been advised by counsel of their choice and have entered into this Agreement of their own free will, being fully knowledgeable as to the contents, impact and the operation hereof.

55.     Time is of the essence of this Agreement and each and every term hereof.

56.     This Agreement may be executed in several counterparts and all such executed counterparts shall constitute but one agreement, binding upon all the Parties

{00130142.DOCX;1 / JAW}

File No. 1137.01

hereto notwithstanding that all Parties are not signatories to the original or the same counterpart.

57. The Parties hereby warrant and represent as to each Party, individually, that the execution of this Agreement does not violate the terms of any other agreement between such party and any other third party.

58. The warranties and representations contained herein shall survive the execution of this Agreement and the closing of the transaction contemplated hereby.

59. All notices and other documents which must be sent, served or provided pursuant to this agreement shall be sent to the following persons at the following addresses:

<table>
<tr><td>If to Amsberry:</td><td>James Amsberry, Trustee<br>Amsberry Family Trust<br>829 Grandview Avenue<br>Fullerton, CA 92832</td></tr>
<tr><td>with a copy to:</td><td>William R. Richardson<br>Richardson & Richardson, P.C.<br>1745 S. Alma School Road, Suite 100<br>Mesa, AZ 85210</td></tr>
<tr><td>Jason and Andrea Levecke</td><td>Jason and Andrea LeVecke<br>4473 S. Basha Road<br>Chandler, Arizona 85248</td></tr>
<tr><td>with a copy to:</td><td>Todd Feltus<br>Julia A. Wagner<br>KERCSMAR & FELTUS, PLLC<br>7150 East Camelback Road, Suite 285<br>Scottsdale, AZ 85251</td></tr>
<tr><td>JC123</td><td>Attn: Jason LeVecke, managing member<br>4473 S. Basha Road<br>Chandler, Arizona 85248</td></tr>
</table>

{00130142.DOCX;1 / JAW}

File No. 1137.01

MJC                               Attn: Jason LeVecke, managing member
4473 S. Basha Road
Chandler, Arizona 85248

Any such documents or notices shall be mailed to the addresses stated above, via certified mail, return receipt requested, and shall be deemed received three calendar days after mailing. Such notices shall also be simultaneously emailed to the opposing Parties at an email address separately supplied to counsel for the Principal Parties. Any Party to this Agreement who wishes to receive notification at any other address shall so advise the other Parties to this Agreement by mailing or emailing notice thereof to the addresses and in the manner set forth above. Thereafter, notices to such Party shall be mailed and/or emailed to the new addresses so specified.

60.     The waiver of any terms of this Agreement by any Party hereto shall not constitute a continuing waiver of any such term and any and all such terms shall be complied with thereafter notwithstanding any alleged waiver.

61.     This Agreement cannot be modified except pursuant to a written modification executed by all Parties hereto.

62.     This Agreement shall be construed and interpreted in accordance with the applicable laws of the United States of America and, in particular, the State of Arizona provided however that the choice of law provisions of the State of Arizona shall not operate to modify this provision or result in the application of the law of any other state except the State of Arizona.

63.     Any proceeding to enforce the terms of this Agreement shall be commenced and shall be determined in a court of competent jurisdiction in Maricopa County, Arizona.

{00130142.DOCX;1 / JAW}

File No. 1137.01

The Amsberry Family Trust

By _[signature]_           Dated: 2-12-07 (R. 7-11-07)
James Amsberry
Its Trustee

_[signature]_           Dated: 1-2-17
Jason Dominic LeVecke

          Dated: 1-2-17
Andrea Yvette LeVecke

JC123 Holdings, LLC

By _[signature]_           Dated: 1-2-17
Jason LeVecke
Its managing member

MJC Holdings 123, LLC

By _[signature]_           Dated: 1-2-17
Jason LeVecke
Its managing member

[intentionally left blank]

{00130142.DOCX;1 / JAW}

12 of 14

file No. 1137.09

**STATE OF CALIFORNIA** )
                          ) ss.
**County of** Orange     )

The foregoing instrument was acknowledged before me this 12 day of December, 2016, by James Amsberry, the ~~Trustee~~ of the Amsberry Family Trust, on behalf of such trust with authority to do so.

_____
Notary Public

My commission expires:

Feb. 02, 2018

RAUL PERAZA
COMM. #2056791
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires 02/02/2018

**STATE OF ARIZONA** )
                      ) ss.
**County of Maricopa** )

The foregoing instrument was acknowledged before me this 2 day of JANUARY, ~~2016,~~ by Jason Dominic LeVecke.
2017

_____
Notary Public

My commission expires:

07/03/2019

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
MATTHEW S VALDEZ
My Commission Expires July 03, 2019

**STATE OF ARIZONA** )
                      ) ss.
**County of Maricopa** )

The foregoing instrument was acknowledged before me this 2 day of JANUARY, ~~2016,~~ by Andrea Yvette LeVecke.
2017

_____
Notary Public

My commission expires:

07/03/2019

{00130142.DOCX;1 / JAW}

13 of 14

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
MATTHEW S VALDEZ
My Commission Expires July 03, 2019

file No. 1137.01

**STATE OF ARIZONA** )
                       ) ss.

**County of Maricopa** )

    The foregoing instrument was acknowledged before me this 2 day of ~~JANUARY 2016,~~ by Jason D. LeVecke as managing member for JC123 Holdings, LLC, a Texas limited liability company, with authority to do so.

                                        Notary Public

My commission expires:

    07/03/2019

> NOTARY PUBLIC
> STATE OF ARIZONA
> Maricopa County
> MATTHEW S VALDEZ
> My Commission Expires July 03, 2019

**STATE OF ARIZONA** )
                       ) ss.

**County of Maricopa** )

    The foregoing instrument was acknowledged before me this 2 day of JANUARY 2017, ~~2016,~~ by Jason D. LeVecke as managing member for MJC Holdings 123, LLC, a Delaware limited liability company, with authority to do so.

                                        Notary Public

My commission expires:

    07/03/2019

> NOTARY PUBLIC
> STATE OF ARIZONA
> Maricopa County
> MATTHEW S VALDEZ
> My Commission Expires July 03, 2019

Z:\DOC\DOC A-K\A\Amsberry\Pleadings\Amsberry v. LeVecke ADV\ST AG   v.2 - redline w WRR rev 12-08-16.docx

{00130142.DOCX;1 / JAW}

File No. 1137.01